# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| XONDA DIVEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| | ) |
| LINCOLN NATIONAL LIFE | ) |
| INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

COMES NOW Plaintiff, Xonda Diven, and for her claims and causes of action against Defendant, Lincoln National Life Insurance Company, states as follows:

## PARTIES

1. Xonda Diven ("Diven") is a resident and citizen of the State of Missouri.

2. Defendant Lincoln National Life Insurance Company ("Lincoln") is an out-of-state insurance company authorized to do business in the State of Missouri. The Commissioner of the Missouri Department of Insurance is authorized to accept service of process on behalf of Lincoln.

## JURISDICTION AND VENUE

3. Diven brings her claims pursuant to ERISA and 29 U.S.C. § 1001 *et seq.*

4. This dispute is governed by a welfare benefits plan and its policy documents, as well as applicable federal law regarding employer provided benefits. 29 U.S.C. § 1132(e)(1).

5. This Court also has subject matter jurisdiction pursuant to the general jurisdictional statute for civil actions arising under federal law. 28 U.S.C. § 1331.

6. Venue lies in the Western District of Missouri under 29 U.S.C. § 1332(e)(2), as the breach occurred in this district, and because the welfare benefits plan is administered in this district.

7. Venue is also proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to this action occurred within this judicial district.

## INFORMATION REGARDING TRIAL

8. No jury trial is allowed under ERISA law.

## STATEMENTS OF FACT

9. Diven's occupation was as a Technician Coordinator for Johnson Controls ("Johnson.")

10. Diven began working for Johnson in June 2018.

11. During Diven's employment, in the fall of 2021, Diven contracted the COVID-19 virus. She initially exhibited relatively mild symptoms. She quarantined and attempted to recuperate before attempting to return to work.

12. Upon returning to work, Diven noticed a severe drop in her stamina and level of cognition. She began to experience a recurrence of migraine headaches. A combination of insomnia and obstructive sleep apnea began to result in extreme daytime fatigue and somnolence.

13. Diven also began to experience memory impairment. She demonstrated forgetfulness of names and persons, as well as tasks. Her memory problems impaired her ability to perform basic computer functions. Her mental processing speed was highly diminished. Her coworkers and supervisors noticed her memory and overall performance were below her pre-COVID levels.

14. These deficits not only impaired Diven's ability to perform the essential duties of her job, but also her ability to safely engage in normal activities of daily living. Because of her forgetfulness, she began to avoid cooking meals, and pared her driving down to essential travel only due to her inability to follow directions and her lack of ability to remember her destination.

15. Diven's job performance continued to suffer and reached a point where she became completely unable to satisfactorily perform her job duties. Her last day of work was January 7, 2021.

16. After having to stop working, Diven applied for short-term disability benefits. She supplied Lincoln with completed claim forms, authorizations, medical records, and a list of her medical providers. Lincoln evaluated her claim and on August 6, 2021, determined that she was "disabled" under the terms of the policy and awarded benefits.

17. Diven suffers from a combination of impairments related to Post-COVID 19 brain fog. These conditions created restrictions and limitations that were incompatible with the material and substantial duties of her occupation.

18. Johnson sponsored a group short-term disability ("STD") and long-term disability ("LTD") benefits plan ("Plan") for its participating employees.

19. The LTD and STD Plans constitute employee welfare benefit plans as defined by 29 U.S.C. § 1002 (1).

20. The Plans offered disability benefits to qualifying Johnson's employee Plan participants.

21. At all relevant times, Diven has been a participant and covered person under the terms of the Plans.

22. Lincoln is the administrator of the Plans.

23. Johnson delegated or attempted to delegate the function of issuing STD and LTD claim determinations to Lincoln.

24. Johnson and Lincoln entered into an administrative services contract through which Johnson paid Lincoln for acting as claims administrator.

25. Diven applied for STD benefits which Lincoln initially approved.

26. The approval of Diven's STD claim was the result of Lincoln's thorough consideration of the evidence and its determination that Diven has supplied sufficient proof that she met the definition of "Total Disability" or "Totally Disabled" under the policy.

27. Lincoln determined that Diven remained eligible for STD benefits through the maximum duration of the policy.

28. After exhausting STD benefits, Lincoln converted Diven's claim to an LTD claim.

29. On October 5, 2021, Lincoln approved Diven's LTD claim. It determined that Diven met the policy's definition of "Total Disability" or Totally Disabled."

30. The definitions of "Total Disability" and "Totally Disabled" in the STD and LTD policies are identical.

31. Lincoln calculated that her date of disability was January 8, 2021, and that her LTD benefit start date was July 9, 2021.

32. Lincoln paid LTD benefits for the period of July 9, 2021 to approximately December, 2021.

33. On or about February 22, 2022, Lincoln unilaterally closed Diven's claim. On February 24, 2022, Lincoln notified Diven that it had determined that LTD benefits were no longer payable.

34. The STD and LTD policies provide that an Insured Person is entitled to disability payments if that person becomes disabled. Disability is defined in the policies in the same way and is as follows:

> **TOTAL DISABILITY or TOTALLY DISABLED** means the Insured Person's inability, due to Sickness or Injury, to perform each of the Main Duties of his or her Own Occupation. A Person engaging in any employment for wage or profit is not Totally Disabled. The loss of a professional license, an occupational license or certification, or a driver's license for any reason does **not**, by itself, constitute Total Disability.

35. The policies define "duties" as follows:

> **MAIN DUTIES or MATERIAL AND SUBSTANTIAL DUTIES** means those job tasks that:
> (1) are normally required to perform the Insured Person's Own Occupation; and
> (2) could not reasonably be modified or omitted.

36. On March 21, 2022, Diven requested her claim file.

37. On March 22, 2022, Diven received a copy of her claim file of approximately 267 pages. Lincoln either did not consult the insurance policy in administering Diven's claim or failed to produce it as a part of her claim file.

38. On August 23, 2022, Diven submitted a written appeal to Lincoln to request a review of its decision.

39. On October 6, 2022, Lincoln wrote Diven letter indicating that it was submitting Diven's claim to be reviewed by two medical professionals: Dr. Steven Winkel, DO, Board Certified in Internal Medicine, and Dr. David Nowell, Ph.D., Licensed Psychologist. Lincoln invited a response to the peer reviews.

40. On October 27, 2022, counsel for Diven responded to the peer reviews, asserting that the timing of the produced reviews was suspect and how they were obtained. Lincoln had already made their decision and the timing of the peer reviews suggests a "rubber stamp" process.

41. Both the Employee Retirement Security Act ("ERISA") and the Policy itself require such denials to provide specific information, including:

    a. The specific reason(s) the claim was denied.

    b. Specific reference to the Policy provision(s) on which the denial was based.

    c. Any additional information required for the claim to be reconsidered, and the reason this information is necessary.

    d. If the case of any claim for a disability benefit, identification of any internal rule, guideline or protocol relied on in making the claim decision, and an explanation of any medically related exclusion or limitation involved in the decision.

    e. A statement regarding the right to appeal the decision, and an explanation of the appeal procedure, including a statement of the right to bring a civil action under Section 502(a) of ERISA if the appeal is denied.

42. Diven has at all relevant times met the definition of "Disability or Disabled" under the Plan and is entitled to benefits.

43. Lincoln did not perform a vocational analysis of Diven's occupation and did not conduct any analysis of the "main duties" of her occupation.

44. Lincoln did not explain why it believed Diven was no longer disabled after previously determining that she was "Totally Disabled."

45. Diven has exhausted her administrative remedies.

CAUSES OF ACTION

COUNT I
29 U.S.C. § 1132(a)(1)(B) – WRONGFUL DENIAL OF BENEFITS

46. Diven realleges the preceding paragraphs as if fully set forth herein.

47. Diven is entitled to all unpaid and accrued LTD and STD benefits, as Lincoln:

    a. Made an unfavorable decision without substantial evidence;

    b. Failed to perform adequate vocational reviews;

    c. Failed to refer Diven's claim to qualified medical professionals;

    d. Failed to properly consider Diven's medical impairments and resulting limitations;

    e. Failed to appropriately and logically respond to Diven's arguments on appeal;

    f. Failed to provide evidence it relied upon when determining Diven's claim following proper request; and

    g. Issued an unfavorable decision that was arbitrary and capricious.

48. Pursuant to 29 U.S.C. § 1132(a)(1)(b), Diven is entitled to an award of actual damages for losses suffered.

49. Pursuant to 29 U.S.C. § 1132(g), judgment may include compensation for a beneficiary's attorney's fees, costs, and prejudgment interest.

50. Lincoln has not satisfied its obligation to pay Diven's STD and LTD benefits.

51. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(g), Diven prays for judgment against Lincoln for all unpaid STD and LTD benefits, attorney's fees, costs, and prejudgment interest.

## COUNT II
## 29 U.S.C. § 1132(a)(3) – BREACH OF FIDUCIARY DUTY

52. Diven realleges the preceding paragraphs as if fully set forth herein.

53. Under 29 U.S.C. § 1002(21)(A), a fiduciary is one who:

> "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice

for a fee or other compensation, direct or indirect, with respect to any moneys or other property or such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."

54. 29 U.S.C. § 1104(a)(1)(A) describes the fiduciary standard of care:

"a fiduciary shall discharge her duties with respect to a plan solely in the interest of the participants and beneficiaries and – for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

55. Lincoln, the Plan's designated claims administrator, is a fiduciary.

56. Diven participated in and benefitted from the Plan as previously indicated.

57. Lincoln's claims management practices are motivated by financial incentives in its administrative services agreement with Johnson.

58. As the payor of benefits and the entity responsible for exercising discretion in claims administration, Lincoln operates under an inherent conflict of interest.

59. A higher than marketplace quality standard, as set forth in *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 (2008) governs the actions of a fiduciary.

60. Lincoln breached its fiduciary duty in:

    a. Failing to comply with its internal guidelines and claims handling procedures. Its claim handlers did not comply with documented instructions involving the administration of disability claims, including its procedures involving coverage and eligibility determinations;

    b. Repeatedly mischaracterizing Diven's occupation for its own interests;

    c. Relying on an implausible medical review to further its own interests; and

    d. Refusing to utilize fully executed authorizations to attempt to obtain evidence relevant to Diven's claim for benefits;

61. Lincoln denied Diven's LTD benefits for the purpose of elevating its financial interests. In doing so, it breached its fiduciary duties.

62. Lincoln failed to discharge its duties solely in the interests of its participants and beneficiaries. It acted with both a conflict of interest and breached its fiduciary duty to both Diven and the Plan's participants and beneficiaries generally.

63. Lincoln's improper conduct demonstrates that ordinary relief under § 1132(a)(1)(B) is not an adequate remedy.

64. Lincoln's violations of regulations alone allow Diven the right to pursue any remedy under Section 502(a) of ERISA, including § 1132(a)(3). 29 C.F.R. § 2560.503-1(1)(2)(i).

65. Lincoln's violations of federal regulation also subject its decision to *de novo* review.

66. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(3), § 1109, and § 1132(a)(2), Diven prays for an order that Lincoln retrain its employees consistent with ERISA fiduciary obligations and federal regulations; for reformation of its services agreement with the plan administrator consistent with ERISA fiduciary obligations and federal regulations; for an injunction preventing further unlawful acts by Lincoln in its fiduciary capacity; for an equitable accounting of benefits that Lincoln has withheld; for the disgorgement of profits enjoyed by Lincoln in withholding benefits; for restitution under a theory of surcharge; for the Court's imposition of a constructive trust; for an award of attorney fees; and for further relief as the Court deems just.

Respectfully submitted,

**BURNETTDRISKILL, Attorneys**

By: /s/ Derrick A. Pearce
Derrick A. Pearce, Mo. # 42793
Kyle H. Sciolaro, Mo. #64568
Paul J. Taylor, Mo. #72159
103 W 26th Ave., Ste. 290
North Kansas City, MO  64116
P: 816.883.4142
F: 816.792.3634
dpearce@burnettdriskill.com
ksciolaro@burnettdriskill.com
ptaylor@burnettdriskill.com
ATTORNEYS FOR PLAINTIFF